UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES SCOTT,

         Plaintiff,

    v.

SERGEANT DOMINGUEZ,

         Defendant.

Case No. 24-cv-01335-HSG

**ORDER GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE ; GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 25, 25-3, 25-4

Plaintiff, a California state prisoner housed at Salinas Valley State Prison ("SVSP") has filed a *pro se* 42 U.S.C. § 1983 civil rights action, alleging that SVSP sergeant Dominguez denied him his First Amendment right to access the courts. Defendant Dominguez has filed a request for judicial notice, Dkt. Nos. 25-3, 25-4, and a motion for summary judgment, Dkt. No. 25. Plaintiff has filed an opposition, Dkt. No. 30, and defendant Dominguez has filed a reply, Dkt. No. 31.[1] For the reasons set forth below, the Court GRANTS defendant Dominguez's request for judicial notice, Dkt. Nos. 25-3, 25-4; and GRANTS defendant Dominguez's motion for summary judgment. Dkt. No. 25.

//

//

//

---

[1] Two months after defendant Dominguez filed his reply in support of his summary judgment motion, Plaintiff filed a motion requesting that the Court compel three non-parties to sit for depositions, Dkt. No. 32, and defendant Dominguez requested an extension of time to respond to this motion to compel, Dkt. No. 33. The Court does not address these motions because they are moot in light of the Court's grant of summary judgment in favor of defendant Dominguez. In addition, the information that Plaintiff seeks from these third parties is unrelated to, and has no bearing on, whether Plaintiff suffered actual injury, which is the basis for the Court's grant of summary judgment.

United States District Court
Northern District of California

**DISCUSSION**

I.    **Factual Background[2]**

A.    **Plaintiff's Underlying Conviction and Related State Court Proceedings**

On July 2, 2020, an Alameda County jury convicted Plaintiff of first-degree murder, kidnapping and robbery, and also found true a special allegation that Plaintiff personally and intentionally discharged a firearm that caused great bodily injury and death, and a special circumstance of felony murder in the course of kidnapping. RJN, Ex. A [Dkt. No. 25-4 at 6-7]. The Alameda County Superior Court sentenced Plaintiff as follows: (1) life without the possibility of parole on the murder count based on the special circumstance finding, (2) a middle term of five years on the kidnapping count, with an additional 25 years based on the firearm enhancement and three years based on the great bodily injury enhancement, (3) one year on the robbery count, and (4) eight months on the firearm possession count. *Id.* The court stayed the sentences on the last three counts. *Id.*

At trial, Plaintiff was represented at trial by attorney Ernie Castillo. Plaintiff states that Mr. Castillo did not investigate his case, did not present exculpatory evidence, and did not present a defense. Plaintiff's relationship with Mr. Castillo ended the day Plaintiff was convicted. Plaintiff is not in communication with Mr. Castillo. Dkt. No. 25-2 at 17-20, 24.

Plaintiff appealed his sentence and conviction, and was represented on appeal by attorney Simon Wollack. On appeal, Plaintiff argued that (1) the trial court erred in denying his motion for a mistrial based on a lengthy midtrial continuance, in violation of his due process rights, (2) he is entitled to resentencing under Cal. Penal Code § 654, and (3) his sentence of life without the possibility of parole constituted cruel and unusual punishment within the meaning of the Eighth Amendment. RJN, Ex. A [Dkt. No. 25-4 at 2-39]. On September 13, 2022, the state appellate court denied these arguments in a reasoned opinion, and affirmed the sentence and conviction. *Id.*

On October 14, 2022, Plaintiff filed a petition for review in the California Supreme Corut. RJN, Ex. B [Dkt. No. 25-4 at 41]. On January 11, 2023, the California Supreme Court granted the

---

[2] The following facts are undisputed unless otherwise noted.

petition for review and deferred further action pending consideration and disposition of a related matter in *People v. Hardin*, Cal. Sup. Ct. C No. S277486. *Id.* On February 27, 2023, the California Supreme Court appointed Mr. Wollack to represent Plaintiff in the petition. *Id.* On June 12, 2024, the California Supreme Court dismissed the petition and remanded it to the state appellate court. *Id.*; *People v. Garcia*, 549 P.3d 143 (Cal. 2024).

Plaintiff is dissatisfied with Mr. Wollack's representation, which lasted from January 7, 2021 to June 13, 2024. Plaintiff states that Mr. Wollack did not "want to put the footwork in," misrepresented the law to Plaintiff, refused to consider challenging Petitioner's conviction and sentence on any grounds other than the mid-trial continuance, was unprepared for oral argument before the appellate court, was admonished by the appellate court, and did not present any new evidence to the appellate court. Dkt. No. 14 at 9; Dkt. No. 25-2 at 20-21, 25-29.

**B.      Plaintiff's Legal CDs**

During the course of Mr. Wollack's representation of Plaintiff, Mr. Castillo sent Mr. Wollack two boxes of pretrial discovery. The boxes included more than 2,000 pages of police reports, and at least 20 CDs. Dkt. No. 14 at 9; Dkt. No. 25-2 at 17. Plaintiff believes that the CDs were generated by the Oakland Police Department ("OPD"). Dkt. No. 25-2 at 19. Plaintiff claims that these CDs prove his innocence because they show him walking away from the crime as it was happening. Dkt. No. 14 at 5; Dkt. No. 25-2 at 18, 31. Plaintiff describes the contents of the CDs as follows:

> . . . technically the crime I'm being charged for was recorded. Video footage of the crime actually happening was on them CDs.
>
> Other people involved – there was actual – actual statements, like, interviews by policy, people being interviewed by the police, those type of things were on the CDs.

Dkt. No. 25-2 at 18. Plaintiff states that he saw some of the contents of the CDs during trial when Mr. Castillo showed them to him, but only what Mr. Castillo wanted him to see. Dkt. No. 25-2 at 18-19, 27-28. Some of the witness interviews on these CDs were presented at trial, but the contents that proved Plaintiff's innocence were not presented at trial. Dkt. No. 25-2 at 19-20. Mr. Wollack also did not present the contents of these CDs to the state appellate or supreme court.

Dkt. No. 25-2 at 20-21.  Plaintiff states that Mr. Wollack may have been trying to present the evidence, but got admonished in oral arguments so "kind of just chalked it up as a loss."  Dkt. No. 25-2 at 20.  Plaintiff also states that he thinks that Mr. Wollack never looked at the CDs.  Dkt. No. 25-2 at 27-28.  These CDs were not transcribed.  Dkt. No. 14 at 9; Dkt. No. 25-2 at 18-19, 31.

The OPD provided these CDs to the district attorney, who provided them to Mr. Castillo.  Mr. Castillo provided these CDs to Mr. Wollack.  Plaintiff found out that he would have to look into his own case.  Plaintiff then asked Mr. Wollack to send the CDs to him in prison.  Dkt. No. 25-2 at 27.   Plaintiff believes that only one copy of these CDs exists, and that it is the copy sent to Plaintiff in January 2023.  Plaintiff stated that the DA may have an additional copy of the CDs.  Dkt. No. 25-2 at 19.

### C.    January 2023 Receipt of Legal Materials at SVSP

Per Salinas Valley State Prison Operations Manual Supplement Sections 54010.14 and 54030.2, CDs are considered contraband; inmates are prohibited from receiving or possessing contraband; and contraband is to be returned to sender at the inmate's expense.  Dkt. No. 14 at 11.

On January 17, 2023, the two boxes of pretrial discovery sent by Mr. Wollack were received at SVSP.  Dkt. No. 25-2 at 10.  On January 20, 2023, defendant Dominguez inspected the boxes in Plaintiff's presence.  Defendant Dominguez informed Plaintiff that the CDs were considered contraband, that Plaintiff could not possess them in prison, and that they would be returned to his lawyer.   Dkt. No. 25-2 at 13-14, 21-22.  The paper documents were released to Plaintiff and Plaintiff currently has possession of them.  Dkt. No. 25-2 at 11.

Plaintiff filed out a Form 193 for the CDs to be returned to sender, and put down Mr. Wollack's address for the destination address.  Dkt. No. 25-2 at 14.  However, the CDs were not sent to Mr. Wollack, but instead sent to James Scott at 1116 West Union, Modesto, California.  Dkt. No. 14 at 11.  The only person who Plaintiff currently knows in Modesto is his father, Michael Scott, but Plaintiff's father does not live at this address.  Plaintiff's family used to live at that address, but has not lived there since 2022.  At the time the CDs were mailed out, Plaintiff's stepsister, Tiffany Griffen, lived at the Modesto address.  Plaintiff knows Ms. Griffen, but has no connection to her.  If something were sent to Ms. Griffen, Plaintiff could get it.  But Plaintiff

United States District Court
Northern District of California

United States District Court
Northern District of California

would not send something important to the Modesto address because he does not know what Ms. Griffen would do with it.  Plaintiff has spoken to Ms. Griffen in the past couple years.  Ms. Griffen informed him when she received his shoes.  Ms. Griffen did not receive the CDs.  Dkt. No. 25-2 at 15-17.

Plaintiff currently has access to the law library.  Dkt. No. 25-2 at 10.

### D.    Plaintiff's Contemplated Litigation

Plaintiff states that the loss of the CDs has prevented him from filing a federal habeas petition to challenge his conviction.   Dkt. No. 25-2 at 7.  Plaintiff states that he intends to file a federal habeas petition to challenge his conviction on the following grounds:

> One, there's no identifying factors; two, my constitutional rights were violated due to some of them video's content; and three, some of them witnesses pointed out that I was not the murder.  That there was conversations and meetings going on that had nothing to do with me, and that was told to police.  That's actually in some of these people's interviews.

Dkt. No. 25-2 at 22.  Plaintiff states that he cannot file his federal habeas petition without the CDs because these CDs prove these arguments and prove his innocence.  Dkt. No. 25-2 at 7.  Plaintiff further states that the papers in his possession do not help his habeas petition and none of the CDs were transcribed, *id.* at 22-23; he needs to present all his evidence upfront for his federal habeas petition if he is serious about the petition, *id.* at 9; his conviction became final in June 2024, *id.* at 8; and his deadline for filing his federal habeas petition is June 14, 2025, *id*. at 10.

## II.    Request for Judicial Notice (Dkt. Nos. 25-3, 25-4)

Defendant Dominguez has requested that the Court take judicial notice of the following court dockets or pleadings.  Dkt. Nos. 25-3, 25-4.

Defendant Dominguez requests that the Court take judicial notice of the October 10, 2022 Order Modifying Opinion and Denying Rehearing [No Change in Judgment] in *The People v. James Earl Scott*, Cal. Ct. App. Case No. A161644, to confirm the issues considered by the California Court of Appeal in Plaintiff's appeal.  The docket is attached as Exhibit A to the RJN. The Court GRANTS defendant Dominguez's request for judicial notice of Exhibit A for the purpose of demonstrating what issues were raised in Plaintiff's direct appeal.  Exhibit A is a pleading filed in court, it has a direct relation to the matters at issue, and it and its contents can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

5

United States District Court
Northern District of California

*See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.") (internal quotation marks and citation omitted); Fed. R. Evid. 201(b).  The Court takes judicial notice of the existence and contents of Exhibit A, but not the truth of the contents.  *Cf. Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'").

Defendant Dominguez requests that the Court take judicial notice of the docket for Cal. Sup. Ct. C No. S276858, which consolidated *The People v. James Earl Scott*, Case No. A161644 with *The People v. Alejandro Garcia*, Case No. A161579, to demonstrate that, on June 12, 2024, Plaintiff's petition for review was dismissed by the California Supreme Court and remanded to the Court of Appeal.  The docket is attached as Exhibit B to the RJN.  The Court GRANTS defendant Dominguez's request for judicial notice of Exhibit B for the purpose of demonstrating the disposition of Plaintiff's petition for review.  Cal. Sup. Ct. C No. S276858 has a direct relation to the matters at issue, and the disposition of Cal. Sup. Ct. C No. S276858 can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  *See Borneo*, 971 F.2d at 248.

Defendant Dominguez requests that the Court take judicial notice of the form 28 U.S.C. § 2254 petition published by the United States Courts, and the accompanying instruction page, to demonstrate that the form's instructions state: "To proceed in the federal court, [an applicant] must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court."  This form is attached as Exhibit C to the RJN.  The Court GRANTS Defendant's request for judicial notice of Exhibit C and takes judicial notice of the existence of this form and that the form states the above instruction.  The form's existence and the stated instruction can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  *See Borneo*, 971 F.2d at 248.

Defendant Dominguez requests that the Court take judicial notice of the form petition published by the Judicial Council of California, to demonstrate how to file a habeas petition in California superior court. The Judicial Council of California's form petition is attached as Exhibit D to the RJN. The Court GRANTS Defendant's request for judicial notice of Exhibit D and takes judicial notice of the existence of this form, but does not take judicial notice as towhether the form petition accurately instructs how to file a habeas petition in California superior court. The form's existence can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See Borneo*, 971 F.2d at 248.

## III.   Summary Judgment Motion

### A.   Summary Judgment Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W.*

United States District Court
Northern District of California

*Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. If the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

### B.      Legal Standard for Access to the Courts Claim

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996). This right applies to prisoners' challenges to their convictions or sentences or conditions of confinement. *Id*. at 355. Prison officials may not "actively interfer[e] with inmates' attempts to prepare legal documents or file them." *Id*. at 350 (citations omitted). To establish a claim for any violation of the right of access to the courts, the prisoner must prove that the active interference caused an actual injury. *Id.* at 349-51. Actual injury is a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Nev. Dep't of Corrections v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 349). It is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348. There is no actual injury from the inability to bring a frivolous claim which, in this context, is defined as a claim that has no chance of success. *See Nasby v. Nevada*, 79 F.4th 1052, 1056 (9th Cir. 2023) (prisoner did not suffer actual injury based on claim that prison's paging system for law library access prevented him from timely asserting challenge to his conviction based on change in state law because claim would, and did, fail for reasons unrelated to delayed presentation of claim). Once the prisoner establishes a denial of access to the courts, the court should then determine whether the hindrance of the prisoner's access to court was reasonably related to legitimate penological interests. *See Lewis*, 518 U.S. at 361 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). If the hindrance passes the *Turner* test, the denial of access to the courts claim will fail even if there was actual injury.

### C.      Analysis

Defendant Dominguez argues that Plaintiff cannot establish a First Amendment violation

United States District Court
Northern District of California

for denial of access to the courts because he cannot show actual injury with respect to his contemplated litigation, and because defendant Dominguez was not the cause of the alleged injury. With respect to the actual injury argument, defendant Dominguez argues that (1) Plaintiff has not missed the deadline for filing his federal habeas petition because he has not yet exhausted his state court remedies for his claim of innocence; and (2) even with the CDs, Plaintiff could not have filed a federal habeas petition raising an innocence claim because he had not yet exhausted his state court remedies. Defendant Dominguez further argues that it is unlikely that there was exculpatory evidence on the CDs as both Plaintiff's trial attorney and appellate attorney had declined to introduce the contents of the CDs in court, indicating that the evidence was likely unhelpful or irrelevant. Finally, defendant Dominguez argues that Plaintiff cannot establish that he caused Plaintiff's injury – the denial of access to the legal CDs – because Plaintiff could not have possessed the CDs pursuant to prison rules. Defendant Dominguez argues that Plaintiff caused the loss of the CDs by asking Mr. Wollack to send them to him despite being aware of the prison rules, and that defendant Dominguez followed prison policy in mailing out the CDs. In the alternative, defendant Dominguez argues that he is entitled to qualified immunity because he could not have known that mailing contraband CDs to an address where an inmate previously resided violated the Constitution. *See generally* Dkt. Nos. 25, 31.

Plaintiff opposes the summary judgment motion on the following grounds, none of which demonstrate that he has suffered an actual injury. As a sergeant, defendant Dominguez should be familiar with, and took an oath to follow, prison regulations, including those governing handling incoming legal mail. As a sergeant, defendant Dominguez is "liable" for Plaintiff's legal mail. In sending out the contraband, defendant Dominguez failed to comply with regulations that required that the contraband be sent back via confidential mail; that the contraband be sent out within 72 hours; and that the contraband be sent to a litigation office or to a lawyer. If defendant Dominguez had handled Plaintiff's CDs according to prison regulations, Plaintiff's attorney would currently be in possession of the CDs and Plaintiff would be able to access the CDs through his attorney. Plaintiff contends that he raised the argument that the CDs are exculpatory in state court: at the oral argument for his request for a new trial, Plaintiff argued to the trial court judge that the

United States District Court
Northern District of California

witness interviews were exculpatory when played in their entirety and that video footage of the murderer conclusively proved that he was not guilty. Plaintiff argues that the following issues with the Form 193s indicate that there was wrongdoing by correctional officials: (1) Plaintiff was asked to redo the Form 193 three times; (2) the date and time on the Form 193 indicate that the CDs were not sent out within 72 hours, as required by prison regulations; (3) the Form 193 lists the weight of Plaintiff's CDs as 12 pounds and 13 ounces which is impossible because a CD weighs between three to four ounces and the overall weight of the package should have been one pound or less; and (4) the Form 193 which prison officials reference probably refers to the shoes that Plaintiff had to send out because the Form 193 is dated March 1, 2023, which is over a month after he received the legal CDs, and the same day that Plaintiff sent home multiple pairs of shoes. Plaintiff offers the following additional "material facts": ISU was wearing body-worn cameras when they searched Plaintiff's mail yet there are no videos of this incident; and the mailing out of Plaintiff's CDs was not logged despite the requirement that legal mail be logged when sent out. Plaintiff argues that the above are questions of material fact that preclude summary judgment. *See generally* Dkt. No. 30.

None of the issues identified by Plaintiff are material to the issue of whether loss of the legal CDs resulted in actual injury. Plaintiff seeks to file a federal habeas petition arguing actual innocence as proven by the contents of the now-missing legal CDs. Dkt. No. 25-2 at 22. However, such a petition has no chance of success because Plaintiff has not exhausted his state judicial remedies for this innocence claim. 28 U.S.C. § 2254(b), which governs federal habeas petitions, requires a person challenging his conviction to first exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982). A federal district court may not grant the writ unless state court remedies are exhausted, or there is "an absence of available state corrective process," or such process has been "rendered ineffective." *See* 28 U.S.C. § 2254(b)(1)(A)-(B). Plaintiff does not report presenting a claim of actual innocence to the California Supreme Court, and states that neither his trial attorney nor his

10

appellate attorney presented an innocence claim or a claim relating to exculpatory evidence in the CDs in the state courts.  Dkt. No. 25-2 at 20-21, 27-28.  Plaintiff did not suffer actual injury because his innocence claim would fail for reasons unrelated to the loss of the legal CDs.  *See Nasby*, 79 F.4th at 1056-57.  The Court therefore GRANTS summary judgment in favor of defendant Dominguez.

### D.    Qualified Immunity

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  To determine whether an officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.  Because there was no violation of Plaintiff's constitutional rights, as explained above, there is no need to inquire further concerning qualified immunity.

### CONCLUSION

The Court GRANTS defendant Dominguez's request for judicial notice, Dkt. Nos. 25-3, 25-4; and GRANTS defendant Dominguez's motion for summary judgment, Dkt. No. 25. Judgment is entered in favor of defendant Dominguez and against Plaintiff.  The Clerk shall terminate all pending motions as moot, and close the case.

This order terminates Dkt. No. 25.

**IT IS SO ORDERED.**

Dated: January 16, 2026

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

11